IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THERON JOHNNY MAXTON, | : | CIVIL ACTION NO. **1:CV-13-1134** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| J.E. THOMAS, WARDEN, *et al.*, | : | |
| | : | |
| Defendants | : | |

**REPORT AND RECOMMENDATION**

## I.    BACKGROUND.

On April 29, 2013, Plaintiff Theron Johnny Maxton, currently an inmate at the United States Penitentiary Lewisburg, Pennsylvania ("USP-Lewisburg"), filed, *pro se*, his third *Bivens* civil rights action with this Court, pursuant to 28 U.S.C. § 1331.[1] (Doc. 1). Plaintiff submitted a form Complaint with two additional handwritten pages, one page is a continuation of his Defendants and the other page is a continuation of his statement of claim.

_____

[1]*See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).  Plaintiff's actions fall within 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of the United States." (Emphasis added).

Plaintiff's Complaint is a *Bivens* actions under §1331 since he alleges federal officials violated his constitutional rights. *See Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894 (1978).

Plaintiff's two other recent *Bivens* actions filed with this Court are Civil No. 13-0713, M.D. Pa., and Civil No. 13-0658, M.D. Pa.  In Plaintiff's Civil No. 13-0713 case, we screened Plaintiff's Complaint and issued an R&R on April 17, 2013. We recommended that the Court dismiss Plaintiff's Complaint without prejudice until he exhausted his available BOP administrative remedies with respect to all of his claims.  The Court has not yet ruled on our R&R.   In Plaintiff's Civil No. 13-0658 case, the Court issued an Order on April 29, 2013, dismissing the case without prejudice since Plaintiff failed to either pay the filing fee or file the proper *in forma pauperis* motion and authorization form.

On the same date as his Complaint, Plaintiff also filed a Motion for Leave to Proceed *in forma pauperis* and an Authorization form.  (Docs. 2 & 3).  In his  Motion for Leave to Proceed *in forma pauperis,* Plaintiff indicates that he is under imminent danger of serious physical injury since ASIA and SIS prison officials at USP-Lewisburg "had a team ron (sic) on me 4-8-13 with the intent to kill me out of retaliation and on 4-8-13 put a 27 year old inmate in the [cell] to assault and beat me and he [is] still in the [cell] with me as of this writing."[2]  (Doc. 2, p. 3).

In his Civil No. 13-0713 case, Plaintiff alleged that prison officials at USP-Lewisburg violated his rights under the Eighth Amendment regarding the conditions of his confinement because he was exposed to tear gas and because he was placed, "out of retaliation," in a cell with a younger inmate "to get me kill[ed]."  Plaintiff also claimed that he was denied medical care for his asthma and prostate cancer.   In his Civil No. 13-0713 case, Plaintiff Maxton also filed a brief on March 25, 2013, seemingly in support of his request for relief in his Complaint for the Court to order Defendants to place him in Protective Custody and to single cell him at USP-Lewisburg. Plaintiff also indicated in his brief that he was recently transferred to USP-Lewisburg on February 18, 2013, from Colorado.   As noted, we  issued an R&R on April 17, 2013, in Plaintiff's Civil No. 13-0713 case, and we recommended that the Court dismiss Plaintiff's Complaint without prejudice until he exhausted his available BOP administrative remedies with respect to all of his claims.

Also, as noted, Plaintiff  Maxton also filed another  prior *Bivens* civil rights action with this Court, on March 12, 2013, in Civil No. 13-0658, M.D. Pa. In this other case, Plaintiff failed to file

---

[2]It is clear that Plaintiff could not have yet exhausted all of his available BOP administrative remedies with respect to the alleged April 8, 2013 incident.

an *in forma pauperis* motion or pay the filing fee, and the Court dismissed the case on March 18 April 29, 2013.

This Court has jurisdiction over Plaintiff's instant *Bivens* civil rights action pursuant to 28 U.S.C. § 1331. *See Mitchell v. Dodrill*, 696 F.Supp. 2d 454 (M.D. Pa. 2010).

We will now screen Plaintiff Maxton's Complaint as we are obliged to do under the PLRA. *See Abdul-Akbar v. McKelvie*, 239 F. 3d 307, 314 (3d Cir. 2001); *Banks v. County of Allegheny*, 568 F.Supp.2d 579, 589 (W.D. Pa. 2008).[3]

## II.     STANDARDS OF REVIEW.

### A.     PLRA

The Prison Litigation Reform Act of 1995,[4] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. §1915. Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

### B.     *BIVENS* STANDARD

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights

---

[3]We have been assigned his case for pre-trial matters.

[4]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

action.  *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200, n. 16 (M.D. Pa. 1992); *Mitchell v. Dodrill*, 696 F.Supp. 2d 454, 457, n. 1 (M.D. Pa. 2010)(citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)).  To state a claim under *Bivens*, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law.  *See Young v. Keohane*, 809 F.Supp. at 1199; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976).  It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Fisher v. Matthews*, 792F.Supp.2d 745, 2011 WL 1982920, * 23 (M.D. Pa. 2011) *(citing Rode, supra).*

4

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See Banks v. County of Allegheny*, 568 F.Supp.2d at 588.

## C. MOTION TO DISMISS STANDARD

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir.2009).
>
> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal*, 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny]*, 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

## III. COMPLAINT ALLEGATIONS.

As stated, on April 29, 2013, Plaintiff filed this instant *Bivens* civil rights action, pursuant to §1331, against the following Defendants, many of whom are employees of the Bureau of Prison ("BOP") at USP-Lewisburg: (1) J.E. Thomas, Warden; (2) Eric Holder, U.S. Attorney General; (3) Charles Samuel, BOP Director; (4) unnamed ASIA Officials; (5) unnamed SIS Officials; (6) Lieutenant Koppa; (7) Captain Taggart; (8) Officer S. Hicks; (9) Officer B. Tanner; (10) Francis Fasciana, MLP; (11) Dr. Kevin Pigos; and (12) U.S. Senator Lindsay Graham. (Doc. 1, pp. 1-2).

Plaintiff indicates that he filed administrative remedies with the BOP regarding his calms and that the BOP administrative remedy process is completed.[5] (Doc. 1, p. 1). Plaintiff alleges that on

---

[5]In *Banks v. Lappin*, 2009 WL 2486341, *3 (M.D. Pa.), the Court stated: "Prisoners must comply with the PLRA exhaustion requirement as to any claim that arises in the prison setting, regardless of the nature of the claim or the relief sought. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Furthermo**re,** courts are not permitted to "excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (quoting *Beeson v. Fishkill Corr. Facility,* 28 F.Supp.2d 884, 894-95 (S.D.N.Y.1998)); *see also Woodford v. Ngo,* 548 U.S. 81, 92-94, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006) (explaining that the PLRA mandates that inmates "properly" exhaust their claims before filing suit in federal court)."

February 18, 2013, Defendant Warden Thomas knew that Defendant AISA and SIS officers arranged for him to be housed with inmate Orlando McDannels so that he could be assaulted and beaten by McDannels. Plaintiff avers that from February 18 through April 8, 2013, he was beaten and assaulted by McDannels while Defendants Hicks and Tanner looked on. (Doc. 1, p. 3). Plaintiff alleges that Defendants Hicks, Kappa and SIS officers gave McDannels a radio and five books of stamps to beat him for 23 straight days. Plaintiff also avers that Defendants Kappa, AISA and SIS officers, Hicks, Tanner, Pigos and Francis "shove[d] a mop handle up Plaintiff['] s butt and refuse[d] to stop the bleeding." (*Id.*).

Plaintiff avers that Defendant Holder refused to have the FBI come to the prison and investigate the misconduct and, that Defendant Graham refused to help him. Plaintiff also avers that BOP Director Samuel knew about the misconduct and would not do anything "or have all the killing here investigated, knowing that these officers and other officials here are white supremacists and in a group known as Aryan Brotherhood." (*Id.* pp. 3-4). Further, Plaintiff avers that "the last inmate they kill were (sic) last year, and 12 in the last five years or had kill (sic) and the Defendant[s] Eric Holder, B. Thomas, Lindsay Graham know this and still have not done anything to protect the Plaintiff['s] life." (*Id.*, p. 4).

As relief, Plaintiff requests that the Court order the BOP to remove him from USP-Lewisburg immediately, and to direct the United States Attorney to request the FBI to conduct an investigation into his allegations. Plaintiff also requests that the Court initiate federal criminal charges against

---

Thus, Plaintiff was required to exhaust his BOP administrative remedies before he filed his instant action. *See Walker v. Health Services, Lewisburg Penitentiary*, 2007 WL 1395361, * 3 (M.D. Pa.).

each Defendant under the federal hate crimes act.  Further, Plaintiff requests "$100,000,000

million (sic) dollars from each Defendant for pain and suffering" and he requests the Court to order

him to be seen by an outside doctor immediately.  (*Id.*, p. 5).

Thus, Plaintiff requests both injunctive relief and monetary damages.

Plaintiff signed and dated his present Complaint on April 16, 2013, and his present claims, at

least in part, arose on February 18, 2013, and continued through April 8, 2013, eight (8) days

before he filed his Complaint.    Thus, it does not appear that Plaintiff could have exhausted all of

his BOP administrative remedies with respect to all of his claims before he filed his instant

Complaint.

## IV.    DISCUSSION.

With regards to Plaintiff's request that the Court order the BOP to immediately remove him

from USP-Lewisburg, we find that the Plaintiff is requesting relief in the form of Court intervention

and management while he is in prison, *i.e.,* directing USP-Lewisburg as to what prison Plaintiff

should be confined. Plaintiff has no constitutional right to be confined in any particular prison. *See*

*Olim  v. Wakinekona,* 461 U.S. 238, 245 (1983). Further, Plaintiff  has no constitutional  right to any

particular classification or custody level in prison.  *See Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D.

Pa. 1997). Recently, in *Njos v. BOP*, Civil No. 12-1251, M.D. Pa., January 8, 2013 Memorandum

and Order (J. Kosik), the Court dismissed with prejudice Plaintiff inmate's request in a *Bivens* action

seeking the Court to order the  BOP to transfer him to a federal medical facility. Therefore, the

Court will not generally interfere with prison administration matters such as the BOP's decision as

to what facility is proper for Plaintiff.  The Court should give significant deference to judgments of

8

prison officials regarding prison regulations and prison administration. *See Fraise v. Terhune*, 283 F.3d 506 (3d Cir. 2002); *See Levi v. Ebbert*, 2009 WL 2169171, *6 (M.D. Pa.).

Thus, we will recommend that Plaintiff's request that the Court order the BOP to immediately remove him from USP-Lewisburg be dismissed with prejudice. *See Olim, supra*.

Also, Plaintiff's request for a specific amount of monetary damages (Doc. 1, p. 5) should be stricken. Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's requests for specific monetary damages should be stricken from his Complaint. *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure; *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

To the extent that Plaintiff is seeking monetary damages (*i.e.*, compensatory damages) against Defendants in their official capacities, we will recommend that this request for relief be dismissed with prejudice as Plaintiff can only seek monetary damages from Defendants in their personal capacities. *See Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998); *Douglas v. BOP,* Civil NO. 08-0140 (M.D. Pa.); *Debrew v. Auman*, 354 Fed. Appx. 639, 641 (3d Cir. 2009)(Per Curiam). The law is clear that *Bivens* "only authorizes suit against federal officials in their individual capacities and not against the United States and federal agencies." *Goodson v. Maggi*, 2010 WL 1006901, *7 (W.D. Pa. 2-22-10). Thus, Plaintiff's claim for monetary damages to the extent they are against Defendants in their official capacities should be dismissed with prejudice. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103,

111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). However, based on well-settled law, we find futility in granting Plaintiff leave to amend his damages claim against Defendants in their official capacities and, thus, this claim should be dismissed with prejudice.

Insofar as Plaintiff requests this Court to direct the United States Attorney to have the FBI conduct an investigation into his allegations and requests that this Court initiate federal criminal charges against each Defendant, we will recommend that these requests be dismissed with prejudice.    To the extent Plaintiff avers that Defendants broke federal criminal laws, and insofar as Plaintiff is seeking this Court to have Defendants criminally investigated, charged and punished for their alleged illegal  behavior, such a request should be dismissed with prejudice.  To the extent that Plaintiff is alleging  in his Complaint that Defendants' conduct violated criminal law and he is deemed as seeking, in part, the initiation of criminal prosecution against Defendants, this Court cannot grant as relief in the present civil rights case the initiation of any criminal prosecution.  The Third Circuit has held that a private person in a federal civil action could not impose criminal liability on a defendant because he lacked standing to do so.  *See Conception v. Resnik*, 2005 WL 1791699, *2, 143 Fed. Appx. 422, 425-26 (3d Cir. 2005) (Non-Precedential).  This Court has no authority to grant Plaintiff relief with respect to alleged criminal conduct in this  federal civil action. *See Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.) aff'd., in relevant part, C.A. No. 09-1486 (3d Cir. 5-21-10); *Banks v. U.S. Attorney*, 2008 WL 3853307, *2. Thus, insofar as Plaintiff is alleging that Defendants violated federal criminal laws and he seeking this Court to have Defendants criminally charged and punished for their alleged illegal behavior, this claim is subject to dismissal with prejudice.  *See Ross v. Pennsylvania Bd. of Probation and Parole*, 2012 WL 3560819, *5 n. 3

(M.D. Pa August 16, 2012). Based on well-settled law, we find futility and undue prejudice to Defendants in granting Plaintiff leave to amend any claim seeking this Court to have Defendants criminally charged and punished.

We also find that Plaintiff has failed to sufficiently state the personal involvement of Defendants Warden Thomas, U.S. Attorney General Holder, Senator Graham and BOP Director Samuels with respect to his constitutional claims, *i.e.*, his Eighth Amendment claims of failure to protect, excessive force and denial of medical care claims. We will recommend that Defendants U.S. Attorney General Holder, Senator Graham and BOP Director Samuels be dismissed with prejudice since we find futility and undue prejudice if the Court allowed Plaintiff to amend his claims as against these Defendants. We find that Plaintiff has only named these Defendants based on *respondeat superior*. We will recommend that Defendant Warden Thomas be dismissed without prejudice.

As discussed, in a *Bivens* civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of federal law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Naranjo v. Martinez*, 2009 WL 4268598, *6 (M.D. Pa. 2009). As stated, with regards to Defendants U.S. Attorney General Holder, Senator Graham and BOP Director Samuels Plaintiff avers that they refused to help him despite knowing about all the killings of inmates at USP-Lewisburg, and that they knew the prison "officers and other officials here are white supremacists and in a group known as Aryan Brotherhood."

With regards to Defendants U.S. Attorney General Holder, Senator Graham and BOP Director Samuels, we find that Plaintiff has only implicated them due to their supervisory roles with the Government and the BOP.  Therefore, we find that Plaintiff has failed to sufficiently allege the personal involvement of Defendants U.S. Attorney General Holder, Senator Graham and BOP Director Samuels  in regards to his constitutional claims.  Rather, we find that Plaintiff has named Defendants U.S. Attorney General Holder, Senator Graham and BOP Director Samuels  solely on the basis of *respondeat superior* which is not  permissible in a civil rights action.

Because Plaintiff has failed to provide the Court with sufficient facts  in relation to his constitutional  claims against Defendants U.S. Attorney General Holder, Senator Graham and BOP Director Samuels  and because Plaintiff has named these Defendants only on the basis of *respondeat superior*, we will recommend that Defendants U.S. Attorney General Holder, Senator Graham and BOP Director Samuels  be dismissed from this action with prejudice as we find futility in allowing Plaintiff to amend his Complaint with respect to these high ranking federal official Defendants.  *See Grayson, supra*.

With regards to Defendant Warden Thomas, Plaintiff merely states on February 18, 2013, Defendant Warden Thomas knew that Defendant AISA and SIS officers arranged for him to be housed with inmate Orlando McDannels so that he could be assaulted and beaten by McDannels. (Doc. 1, p. 2).  Plaintiff also avers that Defendant Warden Thomas knew about all of the killings of inmates at USP-Lewisburg and did nothing to protect his life. Therefore, Plaintiff avers that Defendant Thomas was  involved solely through his position was Warden and based on the doctrine of *respondent superior*.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have  been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (non-precedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

The Court in *Rogers v. U.S.,* 696 F.Supp.2d 472, 488 (W.D. Pa. 2010)*,* repeated the

personal involvement necessary in civil rights action, and stated:

> When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 [or 1331] liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018,

56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983 [or1331] for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

Based on the above-detailed allegations in Plaintiff's Complaint, it is clear that Plaintiff fails to state the requisite factual specificity and allegations of personal involvement with regards to his constitutional claims as against Defendant Warden Thomas. Plaintiff does not sufficiently claim any wrongdoing by this Defendant in his Complaint.

Therefore, because it appears that Plaintiff has named Defendant Warden Thomas solely on the basis of *respondeat superior* which is not permissible in a civil rights action, we will recommend that Defendant Thomas be dismissed without prejudice from this action. It is not clear if it would be futile in allowing Plaintiff to amend his Complaint against Defendant Thomas. *See Grayson, supra*.

As mentioned, Plaintiff avers that on February 18, 2013, when he arrived at USP-Lewsiburg, Defendant AISA and SIS officers arranged for him to be housed with inmate McDannels so that he could be assaulted and beaten by McDannels. Plaintiff alleges that from February 18 through April 8, 2013, he was beaten and assaulted by inmate McDannels while Defendants Hicks and Tanner looked on. (Doc. 1, p. 3). Plaintiff alleges that Defendants Hicks, Kappa and SIS officers gave

14

McDannels a radio and five books of stamps to beat him for 23 straight days. (*Id*.).

We find that Plaintiff has stated a failure to protect claim against Defendants Hicks and Tanner as well as against Defendants Kappa and unnamed ASIA and SIS officers regarding the alleged continuous assaults on him by inmate McDannels.

Under the Eighth Amendment, prison officials have a duty "to take reasonable measures to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (internal citations omitted). In *Glazewski v. Corzine*, 385 F. App'x 83, 88 (3d Cir. 2010), the Court stated:

> To establish a failure to protect claim, an inmate must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison official acted with "deliberate indifference" to his health and safety. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. "[T]he official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

In *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001), the Third Circuit stated that:

> [S]ubjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk. *See* [*Farmer*, 511 U.S.] at 842, 114 S.Ct. 1970. Finally, a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring. *See id.* at 844, 114 S.Ct. 1970.

We find that Plaintiff sufficiently alleges a cognizable failure to protect claim against Defendants Hicks and Tanner as well as against Defendants Kappa and unnamed ASIA and SIS officers because he asserts that these officers not only had knowledge of, but encouraged, physical attacks on Plaintiff by inmate McDannels. (Doc. 1, p. 3). These allegations demonstrate both "substantial risk of serious harm" and "deliberate indifference" to Plaintiff's health and safety. *See*

*Glazewski*, 385 F. App'x at 88. Accordingly, we will recommend that the Court allow Plaintiff's Eighth Amendment failure to protect claims against Defendants Hicks and Tanner as well as against Defendants Kappa and unnamed ASIA and SIS officers to proceed.

Contrarily, we find that Plaintiff's allegations regarding supervisory Defendant Warden Thomas do not sufficiently state cognizable failure to protect claims. With respect to this Defendant, Plaintiff merely states Thomas knew ASIA and SIS officers arranged to have him "housed and assaulted and beaten by inmate McDannels. (Doc. 1, p. 3). We do not find that this allegation sufficiently states that Defendants Thomas had knowledge that Plaintiff was at risk from assaults by any inmate. *See Beers-Capitol*, 256 F.3d at 133. As stated above, it is not sufficient that the official should have been aware of the existence of the excessive risk. *Id.* In any event, we will recommend that Defendant Thomas be dismissed without prejudice.

Plaintiff also avers that Defendants Kappa, AISA and SIS officers, Hicks, Tanner, Pigos and Francis "shove[d] a mop up Plaintiff['s] butt and refuse[d] to stop the bleeding." (*Id.*). We find that Plaintiff has not sufficiently stated an excessive force claim against Defendants Kappa, AISA and SIS officers, Hicks, Tanner, Pigos and Francis.

In *Matthews v. Villella*, 381 F. App'x 137, 139 (3d Cir. 2010), the Third Circuit stated the following regarding Eighth Amendment excessive force claims against prison officials by inmates:

> The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 [ ] (1992)). When reviewing Eighth Amendment excessive force claims, we must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7 [ ]. Whether the force applied was excessive requires the examination of several factors including:

> (1) 'the need for the application of force'; (2) 'the relationship between
> the need and the amount of force that was used'; (3) 'the extent of the
> injury inflicted'; (4) 'the extent of the threat to the safety of staff and
> inmates, as reasonably perceived by responsible officials on the basis of
> the facts known to them'; and (5) 'any efforts made to temper the
> severity of a forceful response.'

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)(quoting *Whitley v. Albers*, 475 U.S.
312, 321 [ ] (1986)).

In the instant case, based on the above detailed allegations of Plaintiff, we will recommend

that Plaintiff's Eighth Amendment excessive force claim against Defendants Kappa, AISA and SIS

officers, Hicks, Tanner, Pigos and Francis be dismissed without prejudice since he fails to state what

each one of these Defendants personally did in the alleged mop incident. As stated, Plaintiff merely

asserts that these Defendants "shove[d] a mop up Plaintiff['s] butt and refuse[d] to stop the

bleeding." (Doc. 1, p. 3). While Plaintiff adequately alleges infliction of pain that was unnecessary

and wanton and that was not exerted in an attempt to restore discipline, he does not state what

each one of the Defendants personally did. *See Matthews*, 381 F. App'x at 139. Thus, we will

recommend that Plaintiff's excessive force claim regarding the mop handle incident against

Defendants Kappa, AISA and SIS officers, Hicks, Tanner, Pigos and Francis be dismissed without

prejudice. Additionally, we do not find that Plaintiff has stated a denial of medical care claims

against these Defendants.

In *Carpenter Carpenter v. Kloptoski*, 2011 WL 995967, *6 (M.D. Pa. 3-17-11), the Court

stated:

> To demonstrate a prima facie case of Eighth Amendment cruel and unusual
> punishment based on the denial of medical care, plaintiff must establish that
> defendants acted with deliberate indifference to his serious medical needs.
> *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976);

> *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993). There are two components
> to this standard: First, a plaintiff must make an "objective" showing that the
> deprivation was "sufficiently serious," or that the result of the defendant's denial
> was sufficiently serious. Additionally, the plaintiff must make a "subjective"
> showing that defendant acted with "a sufficiently culpable state of mind."
> *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991);
> *see also Montgomery v. Pinchak,* 294 F.3d 492, 499 (3d Cir.2002). The
> "deliberate indifference to serious medical needs" standard is obviously met
> when pain is intentionally inflicted on a prisoner, when the denial of reasonable
> requests for medical treatment exposes the inmate to undue suffering or the
> threat of tangible residual injury, or when, despite a clear need for medical care,
> there is an intentional refusal to provide that care. *See Spruill v. Gillis,* 372 F.3d
> 218, 235 (3d Cir.2004) (quoting *White v. Napoleon,* 897 F.2d 103, 109 (1990);
> *Monmouth County Corr. Inst. Inmates v. Lensario,* 834 F.2d 326, 346 (3d
> Cir.1987).

As stated above, we do not find that Plaintiff has sufficiently alleged that Defendants

Defendants Kappa, AISA and SIS officers, Hicks, Tanner, Pigos and Francis personally participated

in the decision to deny him medical care to stop the bleeding caused by the mop handle "shove[d]

... up Plaintiff['] s butt."   Thus, we will recommend that Plaintiff has stated a denial of medical care

claims against Defendants Kappa, AISA and SIS officers, Hicks, Tanner, Pigos and Francis be be

dismissed without prejudice.

## V.    RECOMMENDATION.

Based on the foregoing, we respectfully recommended that:

1)      Plaintiff's request that the Court order the BOP to immediately remove him from

USP-Lewisburg be **DISMISSED WITH PREJUDICE**.

2)      Plaintiff's claims for damages against Defendants in their official capacities be

**DISMISSED WITH PREJUDICE**.

18

3)      Plaintiff's request for a specific amount of monetary damages (Doc. 1, p. 5) should be **STRICKEN FROM HIS COMPLAINT**.

4)      Plaintiff's request that this Court to direct the United States Attorney to have the FBI conduct an investigation into his allegations and his request that this Court initiate federal criminal charges against each Defendant be **DISMISSED WITH PREJUDICE.**

5)      Defendants U.S. Attorney General Holder, Senator Graham and BOP Director Samuels be **DISMISSED WITH PREJUDICE.**

6)      Defendant Warden Thomas be **DISMISSED WITHOUT PREJUDICE.**

7)      Plaintiff's failure to protect claim against Defendants Hicks, Tanner, Kappa and unnamed ASIA and SIS officers regarding the alleged continuous assaults on him by inmate McDannels be **PERMITTED TO PROCEED.**

8)      Plaintiff's excessive force claim regarding the mop handle incident against Defendants Kappa, AISA and SIS officers, Hicks, Tanner, Pigos and Francis be **DISMISSED WITHOUT PREJUDICE.**

9)      Plaintiff's Eighth Amendment denial of medical care claim against Defendants Kappa, AISA and SIS officers, Hicks, Tanner, Pigos and Francis be **DISMISSED WITHOUT PREJUDICE**.

Finally, we recommend that this case be remanded to the undersigned for further proceedings.


                                          s/ Thomas M. Blewitt
                                          **THOMAS M. BLEWITT**
                                          **United States Magistrate Judge**


**Dated: May 8, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THERON JOHNNY MAXTON, | : | CIVIL ACTION NO. **1:CV-13-1134** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| B. THOMAS, WARDEN, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **May 8, 2013.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated:  May 8, 2013**